# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

STEVEN J. VIECZOREK and
HEATHER H. VIECZOREK,

    Plaintiffs,

v.                                      Case No. 3:17-cv-1118-J-32JBT

SHAYAN KHORRAMI and A&P
AUTO SALES,

    Defendants.

## **O R D E R**

This case is before the Court on Defendants Shayan Khorrami and A&P Auto Sales' Motion to Compel Arbitration and Dismiss and/or Abate Action. (Doc. 34). Plaintiffs Steven and Heather Vieczorek, proceeding pro se, responded, (Doc. 35), at the request of the Court, (Doc. 41), Defendants replied, (Doc. 42), and with permission Plaintiffs filed a sur-reply, (Doc. 45). On January 29, 2019, the Court held a hearing on the motion, the record of which is incorporated herein. (Doc. 48).

## I. BACKGROUND

On May 30, 2017, Mr. Vieczorek saw a Craigslist advertisement by A&P Auto Sales for a 2006 Honda Pilot, which stated the vehicle had 110,000 miles. (Doc. 31 at 7). Plaintiffs went to the dealership and inspected the vehicle, and

Khorrami, the owner of A&P Auto Sales, (Doc. 11 ¶ 1), told Mrs. Vieczorek that the vehicle had 115,000 miles, "which was roughly consistent with the electronic odometer . . . ." (Doc. 31 at 7). Mr. Vieczorek and Khorrami exchanged text messages and phone calls negotiating the sale of the Honda Pilot. Id. Ultimately, the two agreed on a purchase price of $6,000. Id. On May 31, 2017, Mr. Vieczorek withdrew $6,000 from a bank and delivered it to Khorrami. Id. However, Mr. Vieczorek did not sign the Motor Vehicle Retail Sales Contract and Bill of Sale or the Arbitration Agreement, which were signed by Mrs. Vieczorek. (Docs. 34-1; 34-2).

Four days later, Plaintiffs began experiencing issues with the vehicle, and on June 5, 2017, they took it to a Honda dealership and were told it needed a new engine. (Doc. 31 at 8). On June 14, 2017, Plaintiffs obtained a Carfax history of the vehicle, which indicated that the Honda Pilot was sold at an auction in Georgia on April 24, 2017 with 150,806 miles. Id.; (Doc. 31-3). Plaintiffs reviewed the images posted on the Craigslist advertisement and found that of the twenty-four images of the vehicle, twenty-three listed 110,000 miles but one showed the odometer having 150,899 miles. (Doc. 31 at 8).

On October 5, 2017, Plaintiffs filed their initial Complaint. (Doc. 1). The Third Amended Complaint, the operative complaint, alleges violations of

"Federal Odometer Law"[1] and corresponding regulations (Count I), a Florida common law claim for fraud in the inducement (Count II), and respondeat superior (Count III). (Doc. 31 at 7–11). After filing several motions directed to the earlier complaints, Defendants have now filed a Motion to Compel Arbitration and Dismiss and/or Abate Action. (Doc. 34). Defendants assert that the arbitration agreement signed by Mrs. Vieczorek covers the allegations asserted, and, therefore, Mrs. Vieczorek should be compelled to arbitrate her claims. Id. at 3–5. Additionally, Defendants claim that Mr. Vieczorek lacks standing because he is not a purchaser or owner; rather, Mrs. Vieczorek signed the purchase agreement and her name is on the title. Id. at 5–7. Lastly, Defendants claim that the Honda Pilot is exempt from odometer disclosure and, thus, the Third Amended Complaint fails to state a cause of action. Id. at 7.

## II. DISCUSSION

### A. Defendants Waived Their Right to Compel Arbitration

Plaintiffs argue that Defendants waived their right to arbitration by litigating the matter in this Court. (Doc. 35 at 10–11). To determine if a party waived its contractual right to arbitrate, courts (1) "decide if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right," and (2) "look to see whether, by doing so, that party has in some way

---

[1] Plaintiffs' claims are brought pursuant to the Federal Motor Vehicle Information and Cost Savings Act ("Odometer Act"), 49 U.S.C. § 32701, et seq.

prejudiced the other party." Krinsk v. SunTrust Banks, Inc., 654 F.3d 1194, 1200 (11th Cir. 2011) (quotation marks omitted) (quoting Ivax Corp. v. B. Braun of Am., Inc., 286 F.3d 1309, 1315 (11th Cir. 2002)). The party arguing waiver "bears a heavy burden of proof." Id. at 1200 n.17. A party may waive its contractual right to arbitration if they "substantially invoke[] the litigation machinery prior to demanding arbitration . . . [and] that conduct manifests the party's intent to waive arbitration." Id. at 1201. In determining prejudice to the opposing party, courts look at the length of the delay and the expenses incurred from litigation. Id.

Here, Defendants waived their rights to compel arbitration by "substantially invok[ing]" the litigation process. See id. During the tortured motion practice in this case, Defendants, through their prior counsel, filed three motions to dismiss, (Docs. 7; 10; 22), and a memorandum in support of the first two motions to dismiss, (Doc. 15). Although Defendants incorrectly claimed that the arbitration agreement deprived the Court of subject matter jurisdiction, (e.g., Doc. 15 at 10), Defendants never sought to compel arbitration. In further demonstration of Defendants' invocation of this Court's "litigation machinery," Defendants filed and served Requests for Admission, (Docs. 20; 21), and a joint Case Management Report requesting that the case be set for trial, (Doc. 19). It was not until Defendants obtained new counsel, more than six months after the case began, that they clearly and unequivocally requested the Court to compel

4

arbitration. (Doc. 34). But the request was too late; Defendants already waived their right to do so. Plaintiffs would be prejudiced by now having to start their case anew after six months of litigation in this Court.

**B. Plaintiff Steven Vieczorek has Standing**

Defendants argue that Mr. Vieczorek lacks standing because "he was not a purchaser and is not the owner of the subject 2006 Honda Pilot. His relationship as the husband of the purchaser confers no basis for standing." (Doc. 34 at 6). Additionally, Defendants assert that the Odometer Act's disclosure requirements apply only to transferees, and because only Mrs. Vieczorek's name was on the title and only she signed the contract, Mr. Vieczorek is not a "transferee." (Doc. 34 at 6–7).

To satisfy the "'irreducible constitutional minimum' of standing," the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). Only the "injury in fact" element is at issue here.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting

5

Lujan, 504 U.S. at 560). Here, the question is whether Mr. Vieczorek suffered "an invasion of a legally protected interest." See id. Even though Mr. Vieczorek did not sign the purchase agreement and his name is not on the title, he negotiated the purchase of the vehicle from Defendants, (Doc. 31 at 7, ¶ 5; see also Doc. 31-2), and "withdrew $6000 cash from the bank and delivered it [to] Defendant . . . ." (Doc. 31 at 7, ¶ 6). Because Mr. Vieczorek paid $6,000 based on Defendants' alleged misrepresentations, he has suffered an injury-in-fact.[2]

**C. The Third Amended Complaint States a Claim**

Lastly, Defendants moved to dismiss the Third Amended Complaint on the basis that the 2006 Honda Pilot is exempt from the Odometer Act's disclosure requirements. (Doc. 34 at 7). Although Count I, "Violations of Federal Odometer Law," does not list what sections of the Odometer Act are at issue, the Third Amended Complaint lists 49 U.S.C. §§ 32703–32705, 32710 as the basis for federal jurisdiction. (Doc. 31 at 4). Count I, construed liberally, states a claim for violations of §§ 32703 and 32704.[3] (Doc. 31 at 9, ¶ 13 ("Defendants altered or had altered the odometer or the Honda Pilot and then lied about the

---

[2] The parties' arguments concerning whether Mr. Vieczorek is a "transferee" are irrelevant. As explained below, § 32705, the section using the word "transferee" shall not be a basis for Plaintiffs' claims going forward.

[3] Section 32703 makes it unlawful for a person to alter an odometer "intending to change the mileage registered by the odometer." 49 U.S.C. § 32703(2). Section 32704 requires that persons reset an odometer to zero and attach a note to the vehicle if he has serviced, repaired, or replaced an odometer and as a result the odometer's mileage reading cannot remain the same. Id. § 32704.

mileage both verbally and in writing on Craigslist.")). However, because the vehicle at issue was more than ten years old at the time of the sale, it is exempt from the disclosure requirements of 49 U.S.C. § 32705 and 49 C.F.R. § 580.5. 49 U.S.C. § 32705(a)(5); 49 C.F.R. § 580.17; see also Beam v. Domani Motor Cars, Inc., 922 F. Supp. 2d 1338, 1343 (S.D. Fla. 2013) (holding that the defendant was exempt from the disclosure requirements, but stating: "While the Court finds this result troubling . . . [it] notes that Plaintiff is not without legal recourse. In addition to his [§§ 32703–32704] claims . . . , Plaintiff may and does pursue various state statutory and common-law claims.").

Plaintiffs argue that the exemption in 49 C.F.R. § 580.17 only applies to 49 U.S.C. § 32705(a)(1)(A) and not to § 32705(a)(1)(B). (Doc. 35 at 5–8). Specifically, Plaintiffs argue that the exemption's language stating "need not disclose the vehicle's odometer mileage" would not apply to § 32705(a)(1)(B), which requires a "[d]isclosure that the actual mileage is unknown, if the transferor knows that the odometer reading is different from the number of miles the vehicle has actually traveled." Although Plaintiffs are correct that disclosing a "vehicle's odometer mileage" differs from disclosing a known discrepancy with the odometer, the Court could not find any case making such a distinction. Instead, the majority of courts that have interpreted the regulation have held that it exempts the transferor from any disclosure requirements if the vehicle is more than ten years old. See, e.g., Tirtel v. Sunset

7

Auto & Truck, LLC, No. 218CV481FTM99MRM, 2019 WL 186650, at *2 (M.D. Fla. Jan. 14, 2019) ("The GMC's manufacture year is 2008, making the vehicle exempt from odometer disclosure requirements starting January 2018."); Beam, 922 F. Supp. 2d at 1343 (stating that the regulation "expressly exempts vehicles older than ten years at the time of sale from the disclosure requirements of the Act.").

Further, the Department of Transportation has consistently referred to the rule as an exemption "from the odometer disclosure requirements," even though the specific language of the rule is not so broad. See, e.g., Odometer Disclosure Requirements; Exemptions, 62 Fed. Reg. 47763-02 (Sept. 11, 1997) ("This interim final rule amends 49 CFR Part 580 by establishing a new § 580.17, by repromulgating the exemptions for certain categories of vehicles from odometer disclosure requirements now located in §580.6, and by moving the exemptions to the new §580.17."); Odometer Disclosure Requirements, 52 Fed. Reg. 27022-01 (July 17, 1987) ("We are proposing a new [section] which exempts certain transferors from issuing odometer disclosure statements."); Odometer Disclosure Requirements, 46 Fed. Reg. 60482-01 (Dec. 10, 1981). Although Plaintiffs have distinguished the language in the regulation, the Court will follow the Department of Transportation and other courts from within the Eleventh Circuit in holding that the exemption applies to all

disclosure requirements.[4] See, e.g., Tirtel, 2019 WL 186650, at *2; Beam, 922 F. Supp. 2d at 1343; Odometer Disclosure Requirements; Exemptions, 62 Fed. Reg. 47763-02 (Sept. 11, 1997).

Plaintiffs raise a valid argument that such an interpretation facilitates fraud by sellers of older vehicles and goes against the purpose of the Odometer Act. However, the consistent interpretation of the regulation has been that it exempts sellers from the entire disclosure requirement, and the Court will follow those interpretations here.[5]

---

[4] Although the regulations exempt transferors from making the required disclosures for certain classes of vehicles, this district has consistently held that if a transferor waives the right to exemption it must be truthful in its disclosure. Tirtel, 2019 WL 186650, at *3 (explaining that a transferor who makes a disclosure for an exempt vehicle can nonetheless be held liable for violating § 32705(a)(2) if the disclosure contains false statements); Coleman v. Lazy Days RV Ctr., Inc., No. 8:05CV00930 T 17 TBM, 2006 WL 2131303, at *3 (M.D. Fla. July 28, 2006) ("[W]hen a seller does nevertheless voluntarily disclose, the statement must be accurate and truthful."). Although the Craigslist advertisement at issue here listed the incorrect mileage, such advertisement was not a "disclosure" and Plaintiffs have presented no disclosure documents containing the false statement. 49 U.S.C. § 32705(a)(2) ("A person transferring ownership of a motor vehicle may not violate a regulation prescribed under this section or give a false statement to the transferee in making the disclosure required by such a regulation." (emphasis added)); (see Docs. 15-1; 15-2).

[5] Originally, the exemption was for vehicles twenty-five years or older because antique cars were valued on their age, condition, and rarity, not their mileage. Part 580 – Odometer Disclosure Requirements, 38 Fed. Reg. 2978–79 (Jan. 31, 1973). In 1988, the National Highway Traffic Safety Administration changed the exemption to cars older than ten years as part of the Truth in Mileage Act of 1986. Odometer Disclosure Requirements, 53 Fed. Reg. 29464-02 (Aug. 5, 1988). The change was based on requests from a "coalition" of national associations who suggested that studies "indicate that the incidence of odometer tampering on vehicles over ten model years old is disproportionately small as compared to the vehicle population represented by that age group . . . [and] that the selling price of vehicles over ten years old is not typically based on the odometer reading." Id. However, based on modern car sales trends, the regulation seems outdated and in need of updating. See Odometer

9

Plaintiffs' allegations that Defendants defrauded them by listing an incorrect mileage in the Craigslist advertisement is encompassed by Count II. Accordingly, at trial, Plaintiffs shall not attempt to prove that Defendants violated the Odometer Act's disclosure requirements, but should focus their evidence and testimony on violations of 49 U.S.C. §§ 32703 and 32704 (Count I) and Counts II and III.

Accordingly, it is hereby

**ORDERED:**

1. Defendants' Motion to Compel Arbitration and Dismiss and/or Abate Action (Doc. 34), is **DENIED** as stated herein.

2. Not later than **April 1, 2019**, Defendants shall file their answer.

3. The stay on discovery is **LIFTED**. The parties may resume discovery in accordance with the Federal Rules of Civil Procedure and the Middle District of Florida's Local Rules. However, discovery is limited only to matters relating to the transaction between Plaintiffs and Defendants at issue here. Stated differently, discovery shall not include information concerning other instances where Defendants allegedly engaged in similar conduct with different persons.

---

Disclosure Requirements, 81 Fed. Reg. 16107 (Mar. 25, 2016) (proposing a rule to change the exemption back to twenty-five years because "[t]he average age of the United States vehicle fleet has been trending upward and recently reached 11.5 years."). However, this is a policy decision for DOT.

4. Plaintiff[s'] Motion for an Order to Compel Defendants to Answer the 3rd Amended Complaint and to Disclose Insurance Information, Mandatory Disclosures and all Other Disclosures That are Due in Accordance with the "CMR" (Doc. 49), is **MOOT**. The disclosure deadlines will begin to run once the Court issues a Case Management and Scheduling Order.

5. Not later than **March 22, 2019**, Plaintiffs shall file a notice with the Clerk of Court stating whether they have obtained counsel or if they would like the Court to consider appointing them a lawyer.

6. The Court will enter a Case Management and Scheduling Order via separate order.

7. All parties, either individually or through counsel, are required to attend all case events and comply with all dates and deadlines.

**DONE AND ORDERED** in Jacksonville, Florida this 7th day of March, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

jb
Copies to:

Counsel of record
Pro se parties

11